**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIGHT HAND LLC, | ) | |
| | ) | |
| | ) | Case No. 1:25-cv-11700 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| SHENZHEN AOYA KUAJING | ) | |
| DIANZI SHANGWU YOUXIAN | ) | |
| GONGSI D/B/A MYLIVELL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bright Hand LLC ("Plaintiff") brings claims against e-commerce stores, Shenzhen Aoya Kuanjing Dianzi Shangwu Youxiangongsi d/b/a Mylivell ("Defendant"), alleging patent infringement (Count I) and unfair competition (Count II) stemming from Defendant's sale of allegedly infringing products to Illinois consumers. Presently before the Court is Defendants' Motion to Dismiss Count II ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6) . For the following reasons, the Court grants Defendant's Motion.

**I.     Background**

Unless otherwise noted, the following factual allegations are taken from Plaintiffs' Amended Complaint (hereinafter, "Complaint"), (Dkt. 16), and are assumed true for purposes of resolving these Motions. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

1

### A. '377 Patent

Plaintiff owns the '377 Patent by assignment and holds full and sole rights to enforce and exploit the patent. The scope of the protection includes:

> An illuminating assembly configured for being worn by a person, said assembly comprising:
>
> A wearable light mount configured to be positioned on a person's hand, said wearable light mount including;
>
> a panel having a first end, a second end, a first lateral edge, a second lateral edge, a top surface and a bottom surface, said panel being configured to be positioned on top of the hand;
>
> a wrist coupler being attached to said first end, said wrist coupler being configured to be extended around a wrist of a person to retain said panel on the hand;
>
> a finger sleeve being attached to said second end, said finger sleeve being positioned adjacent to said first lateral edge, said finger sleeve being configured to receive an index finger of the hand;
>
> a light emitter being attached to said wearable light mount, said light emitter being directed away from said first end of said panel; and
>
> an actuator being operationally coupled to said light emitter, said light emitter being turned on or off when said actuator is actuated, said actuator being attached to said wearable light mount.

(Dkt. 16-1 at *1.) After purchasing the patent, Plaintiff began marketing an embodying product under its "Pro Glow" line of products, which are available for sale on Plaintiff's website at https://proglowgear.com. One of its products, the LED flashlight glove, pictured below, is a gadget for various tasks that require illumination while keeping a user's hands free. These gloves have small LED lights embedded in the fingers or palm, which can be turned on to provide light in dark or dimly

2

lit environments, such as, e.g., dark or cramped spaces, like under sinks, inside cabinets, or in engine compartments.



### B. Discovery of Defendant's Conduct

Plaintiff implemented an anti-infringement program that utilizes proactive internet sweeps to investigate suspicious websites and online marketplace listings that sell possibly infringing products. Plaintiff identified multiple of Defendant's e-commerce stores offering unauthorized, allegedly infringing products on platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), WhaleCo, Inc., ("Temu"), and Walmart, Inc. ("Walmart"), including e-commerce stores operating under

Defendant's Seller Aliases. For example, a Mylivell "LED Flashlight Glove" is reflected in the Amazon listing below:



(Dkt. 16-2 at *1.) Plaintiff alleges Defendant, a Chinese entity, targeted sales to Illinois residents by setting up and operating e- commerce stores using Seller Alias, Mylivell. Plaintiff further alleges Defendant designed its e-commerce stores so they appear, to unknowing consumers, that Plaintiff authorized Defendant's use of Plaintiff's patent.

## II.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## III.    Discussion

4

In its Motion, Defendant argues Count II is an improper attempt to repackage a patent infringement claim as a Lanham Act claim and, in any event, fails to plead the elements of either false association or false advertising. (Dkt. 39 at *1). Plaintiff, by contrast, argues it does not seek to enforce patent rights through the Lanham Act but instead seeks to enforce an unfair competition claim, arguing Defendant engaged in deceptive commercial conduct by marketing and selling infringing products in a manner that falsely conveyed authorization, legitimacy, and lawful affiliation in the U.S. marketplace, misleading consumers and unfairly diverting sales. ( Dkt. 42 at *1.) The Court will address the merits of these arguments in turn.

Section 1125(a) of the Lanham act "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). For false association claims, the Lanham Act prohibits a "false designation of origin" likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association... or as to the origin" of "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). A false designation of origin claim can be based on passing off or reverse passing off: *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1. (2003). Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's; "reverse passing off," as its name implies, is the opposite: the producer misrepresents someone else's goods or services as his own. (*Id.* at *28.).

For a false advertising claim pursuant to § 1125(a)(1)(B), a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be

injured as a result ... *Dyson, Inc. v. Sharkninja Operating LLC*, 259 F. Supp. 3d 816, 828 (N.D. Ill. 2017) (Gottschall, J.)(citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

Defendant argues Plaintiff's Lanham Act claim is insufficient as a matter of law because it does not identify any independent trademark-type misconduct—no use of Plaintiff's marks, no passing off, no false designation of origin, and no false statement in commercial advertising or promotion. (Dkt. 39 at *3-4). Instead, Plaintiff's "unfair competition" theory rises or falls entirely on the same nucleus of facts as Count I: that Defendant allegedly makes, offers for sale, and sells products that infringe Plaintiff's patent(s). (*Id.*) This sort of assertion, Defendant argues, is merely a utility-patent claim. (*Id.*) (citing *Dastar*, 539 U.S. at 37 (where the gravamen of the complaint is that the defendant copied the plaintiff's protected innovation and sold its own goods with arguably minor modifications, such a claim is properly brought as a patent infringement claim, not a trademark infringement claim.)) Absent any use of Plaintiff's marks, or any specific statement suggesting Plaintiff's sponsorship, approval, or affiliation, Defendant argues Plaintiff's conclusory allegations cannot plausibly state a § 1125(a)(1)(A) claim. (Dkt. 39 at *5-6.) Defendant additionally argues Plaintiff's false advertising claim fails because the pleading does not identify any false statement. (*Id.*) Defendant concludes, because Plaintiff has not identified any independent Lanham Act wrong beyond the underlying patent infringement itself, Count II overwhelmingly fails. (*Id.*)

Plaintiff, in response, argues its claim is sufficiently pled because it relies on alleged marketplace deception, and does not rely on an authorship or creative work claim that *Dastar* forecloses. Plaintiff alleges Defendant marketed and sold products in a manner that falsely conveyed legitimacy, authorization, and lawful affiliation to U.S. consumers, which is not immunized by *Dastar*. (Dkt. 42 at *2.) Moreover, Plaintiff argues, *Dastar* and other authorities Defendant cites were decided at the summary judgment stage and accordingly, do not supply a pleading-stage rule that compels dismissal here. (*Id.* at *2-3.) Plaintiff emphasizes that the Seventh Circuit has repeatedly cautioned

that a likelihood of confusion analysis and determining whether an advertising is misleading are fact-intensive inquiries that are rarely suitable for resolution on the pleadings. (Dkt. 42 at *3.) (citing *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001) (likelihood of confusion is a question of fact); *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018) (whether an advertisement is misleading typically presents a factual question); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 15–16 (7th Cir. 1992) (holding that advertising may be misleading by implication where the overall message conveyed to consumers is deceptive, even if no statement is literally false.)). Relying on these authorities, Plaintiff argues its Complaint "plausibly alleged misleading marketplace conduct, consumer confusion, and diversion of sales" sufficient to survive Defendant's dismissal Motion. *See* (Dkt. 43 at *3.) Any further analysis, such as determining whether consumers were in fact misled, whether Defendant's presentation conveyed false impressions of legitimacy or authorization, and whether such conduct caused competitive injury , Plaintiff argues, are classic questions for discovery and, if necessary, at the summary judgment stage. (*Id.*)

Ultimately, the Court agrees with Defendant that Plaintiff's claim fails on multiple grounds. First, Plaintiff's claim fails as a matter of law because Plaintiff has not alleged any misconduct, outside of the underlying patent infringement, necessary to maintain its Lanham Act claim. Plaintiff does not alleged Defendant's use of Plaintiff's trademarks, any passing off, any false designation of origin, and does not identify a single misleading or even arguably misleading statement to maintain its claim. Instead, Plaintiff asserts, without support, that Defendant's manufacture and sale of an allegedly infringing product, in and of itself, qualifies as unfair competition or false advertising under the Langham Act. Such an assertion is not supported by any authority Plaintiff cites. Furthermore, Plaintiff's argument is further doomed by its failure to identify even a single "statement" Defendant made, misleading or not, to convey any sort of affiliation with Plaintiff. Without more, Plaintiff cannot maintain its Lanham Act claim.

7

Second, while Plaintiff attempts to distinguish its claim from *Dastar*, its ruling, that certain cases are limited to patent enforcement and foreclosed from Lanham Act enforcement, is clearly applicable. As *Dastar* explains, in construing the Lanham Act, the Supreme Court has been "careful to caution against misuse or over-extension" of trademark and related protections into areas traditionally occupied by patent or copyright. 539 U.S. at 34 (citing *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001)). The Lanham Act "does not exist to reward manufacturers for their innovation in creating a particular device; that is the ***purpose of patent law*** and its period of exclusivity." 539 U.S. at 34. Federal trademark law "has no necessary relation to invention or discovery," but rather, by preventing competitors from copying "a source-identifying mark." *Id.* Here, where Plaintiff does not plead a single "source-identifying" mark at issue, like the plaintiff in *Dastar*, the Court will not improperly overextend the Lanham Act's protections.

Third and relatedly, Plaintiff seeks to improperly apply trademark "likelihood of confusion" authorities to its traditional, utility-patent claims. Plaintiff's claim is easily distinguished from the authorities it relies on, however, because those complainants identified a false or misleading statement in advertising or use of a visually similar mark that could be further analyzed through discovery. *But see CAE,* 267 F.3d at 678 (finding block letters in competing marks indistinguishable); *Eli Lilly,* 893 F.3d at 382 (addressing a misleading message about the contents of a food product); *Abbott Labs.*, 971 F.2d at 15–16 (analyzing confusing marketing that suggested sponsorship or approval). Here, by contrast, Plaintiff fails to identify a single misleading statement or action by Defendant, but instead seeks to impermissibly utilize discovery to identify statements that are currently necessary at the pleading stage. Mere sale of an infringing product, absent proof of any deceptive conduct, does not suffice to maintain a Lanham Act claim in this circumstance.

IV.    **Conclusion**

8

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss Count II of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Count I, for patent infringement, remains.

**IT IS SO ORDERED.**

Date: 5/26/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge